Argued December 3, reversed and remanded with instructions
December 31, 1965

## SCHMITZ *v.* YANT ET UX

409 P. 2d 346

*Raymond J. Conboy,* Portland, argued the cause

for appellants. With him on the brief were Hollister & Thomas and William F. Thomas, Portland.

*Paul Schultz,* Oregon City, argued the cause for respondent. On the brief were Hibbard, Jacobs, Caldwell & Kincart and Phil H. Ringle, Jr., Oregon City.

Before McAllister, Chief Justice, and Sloan, Goodwin, Holman and Lusk, Justices.

HOLMAN, J.

Plaintiff brought an action against defendants for loss of consortium, claiming this loss occurred as the result of an injury to her husband caused by defendant's negligent operation of an automobile. A trial was had which resulted in a defendants' verdict. Plaintiff filed a motion for a new trial. The court granted a new trial on the court's own motion—not upon plaintiff's motion. However, the order recited that the court had considered the affidavit of one of the jurors filed as a basis for plaintiff's motion. Defendants appealed from the court's order granting a new trial.

The affidavit which the court said it considered, and which was filed to provide a partial basis for plaintiff's motion, stated that during the voir dire examination of the jury a recess was taken by the court during which a prospective juror—who did not sit on the case—made certain statements claimed to be prejudicial. At this recess all jurors—those in the box as well as those present in the courtroom awaiting call—retired to the jury room, about 24 persons in all. The jury room was about 12 feet by 18 feet in size. The affiant stated that the prospective juror in question engaged her and others in the perimeter of their

conversation in a discussion of the type of case in question. He said he did not think much of it because he had suffered a very severe and disabling injury of long duration which he described in detail and there had never been any loss of love and affection between him and his wife. He stated he did not see how there could be any loss of love and affection, no matter how serious the injury, if a man and his wife loved each other. Affiant further deposed that it was her feeling that the juror's statements might have had a prejudicial effect upon the jurors who sat on the case. She could not be certain how many of the jurors other than herself who were ultimately involved in deliberation actually heard the statements, but it was her impression that some of them had.

The order of the court granting a new trial stated as follows:

"\* \* \* having considered \* \* \* the affidavit of one of the jurors \* \* \*

"I have reviewed the motion for a new trial and am convinced that there was prejudicial misconduct of the jury and that plaintiff is entitled to a new trial on the merits.

"The conduct of prospective juror Robert Sigourney was highly prejudicial. Had Mr. Sigourney stated because of his physical disability his wife had suffered great hardship and that a plaintiff would be entitled to the prayer in a case of this nature, and thereafter the jury finally empaneled returned a substantial verdict, I am convinced that this, too, would be prejudicial comment entitling the defendant to a new trial.

"\* \* \* I, therefore, invoke the inherent judicial power of the court to grant a new trial \* \* \*

"It is hereby ordered and adjudged that plaintiff be granted a new trial on the Court's own motion because of prejudicial conduct occurring in the proceedings."

ORS 17.630, relative to a new trial on the court's own motion, is as follows:

> "If a new trial is granted by the court on its own motion, the order shall so state * * *. Such order shall contain a statement setting forth fully the grounds upon which the order is made * * *. In event an appeal is taken from such an order, the order shall be affirmed only on grounds set forth in the order or because of reversible error affirmatively appearing in the record."

It is unnecessary to a disposition of this case to investigate the very interesting question of whether the court has the power to grant a new trial on its own motion based upon the identical grounds previously presented to the court as a basis for such a motion by a litigant.

By virtue of the terms of ORS 17.630 this court is limited, in sustaining an order for a new trial on the court's own motion, to a consideration of the grounds set forth in the order or to reversible error affirmatively appearing in the record. This case might easily be decided on the basis that the court's order states no ground as the basis for granting a new trial. The order mentions the court has considered the affidavit of the juror but does not say to what effect. It recites that the conduct of the prospective juror was prejudical but does not say in what respect. We will treat the order as if it stated that the action of the prospective juror, which was set forth in the affidavit, was the basis for the new trial.

■■ This case demonstrates a conflict between two basic judicial principles. The first is that a trial court has considerable latitude in granting a new trial, and all intendments are in favor of such orders. *Bartholomew v. Oregonian Pub. Co.*, 188 Or 407, 411, 216 P2d

257 (1950). Also, where there has been a questionable occurrence during trial, a motion for a new trial is addressed to the sound discretion of the trial court and an order granting such a motion will be reversed only for a manifest abuse of discretion. *Cicrich v. S.I.A.C.,* 143 Or 627, 635, 23 P2d 534 (1933); *Clark v. Fazio,* 191 Or 522, 528, 230 P2d 553 (1951); *Burrows v. Nash,* 199 Or 114, 121, 259 P2d 107 (1953); *Hillman v. North Wasco P.U.D.,* 213 Or 264, 274, 323 P2d 664 (1958). The basis for these rules is that the trial judge has the feel of the case and is in a better position to determine whether, in fact, the outcome was prejudiced by the untoward occurrence.

Running counter, in this case, is the principle that it is poor public policy to encourage witch hunts by unsuccessful litigants among the jurors in an attempt to find grounds for a new trial. Any other rule would tend to weaken and destroy the jury system because there would be no finality of decision. *State v. Gardner,* 230 Or 569, 574, 371 P2d 558 (1962); *Carson v. Brauer,* 234 Or 333, 382 P2d 79 (1963). In the latter case this court said, at page 342-343, as follows:

"One function that a verdict and its resulting judgment should perform is to terminate, if possible, the controversy out of which the judgment arose. One of society's major purposes in creating the state and establishing courts is to terminate controversy. If a verdict is to terminate controversy and if the resulting judgment is to possess value for the successful party, the judgment must have the attributes of finality, stability and permanency. Its overthrow must not be easy of accomplishment. Complete honesty, probity and uprightness must at all times be exacted of the jurors, but the courts must recognize that when the jurors, as laymen, are by themselves in the jury room they may at times indulge in remarks of doubtful merit.

The state must assume that the tongue's slip up in instances of that kind does not tilt the scales.

"In *Jorgensen v. York Ice Machinery Corp.,* 160 F2d 432, Judge Learned Hand said, concerning a motion for a new trial which charged misconduct of the jury:

" '* * * On the other hand, it would be impracticable to impose the counsel of absolute perfection that no verdict shall stand, unless every juror has been entirely without bias, and has based his vote only upon evidence he has heard in court. It is doubtful whether more than one in a hundred verdicts would stand such a test; and although absolute justice may require as much, the impossibility of achieving it has induced judges to take a middle course, for they have recognized that the institution could not otherwise survive; they would become Penelopes, forever engaged in unravelling the webs they wove. Like much else in human affairs, its defects are so deeply enmeshed in the system that wholly to disentangle them would quite kill it. * * *' "

■ It should be made clear that as between the conflicting principles of allowing the trial judge wide discretion in granting new trials and of protecting the jury system as an effective method of deciding disputes this court believes the latter to be of the greater consequence.

In discussing what affidavits of jurors are receivable in evidence as to misconduct of the jury, this court, in *Carson v. Brauer,* supra, at page 345, said as follows:

"* * * While jurors' affidavits are receivable in evidence in the sense that the trial court should permit them to be filed, affidavits which disclose nothing more than oral misconduct during the jury's deliberations cannot impeach a verdict. In order to make plain the meaning of the rule, we

will restate it: The affidavit of a juror concerning utterances of other jurors during the deliberations *or at any other material time* cannot warrant the impeachment of a verdict. The kind of misconduct of a juror that will be considered in an attack upon a verdict by a juror's affidavit within the rule set forth in the Gardner and Imlah cases is misconduct that amounts to fraud, bribery, forcible coercion or any other obstruction of justice that would subject the offender to a criminal prosecution therefor. We do not necessarily use the words 'fraud,' 'bribery,' 'forcible coercion,' and 'obstruction of justice' in a purely technical sense, but as words that denote such serious breach of the juror's duties that the trial judge would be justified in citing him for nothing less than contempt of court. * * *" (Emphasis added)

The misconduct set forth in the affidavit of the juror is not the kind of misconduct by another juror which will impeach the jury's verdict. It is argued by plaintiff that the prospective juror could have been cited for contempt because of his disregard of the court's instruction not to discuss the case. This is not the type of contemptuous conduct which is contemplated in *Carson*. It is not contemptuous conduct in connection with activities of such a serious nature as to be classed with "* * * fraud, bribery, forcible coercion or any other obstruction of justice that would subject the offender to a criminal prosecution therefor."

■ It is also claimed that the facts of *Carson* do not make the decision applicable. There the statements, which were of a nature and tenor similar to those in the present case, were made by jurors during deliberation. In the present case they were made by a prospective juror who did not subsequently sit on the case and were not made during deliberation. We do not

believe the factual distinctions justify non-application of the rule laid down in *Carson*. The basic philosophy behind *Carson* is equally applicable here. The occurrence was not sufficiently serious to justify disturbing the verdict even when the wide latitude of discretion vested in the trial judge has been given consideration.

■ Plaintiff urges that the statements of the same juror disqualifying himself on voir dire were a sufficient basis for the court's order. The statement was:

"No, he wouldn't but in order to save the court time, Your Honor, I don't believe there is anything in this God's green earth that can break a couple up if they don't want to be broken up."

It is plain from the wording of the court's order that the court was not using this statement as a basis for granting the new trial. As previously pointed out, ORS 17.630 requires that an order for a new trial made on the court's own motion be affirmed only on grounds set forth in the order or because of reversible error affirmatively appearing in the record. Even if we were willing to assume that the prospective juror's statements on voir dire were sufficient grounds for a mistrial, there was no motion for a mistrial, and thus there could be no reversible error.

An examination will now be made of plaintiff's claims of reversible error affirmatively appearing on the record. Plaintiff says the verdict was contrary to the evidence because there was uncontradicted proof of injury to plaintiff's husband and that, as a result, she was forced to work extra hours in their ice cream business which theretofore had been operated by them. Defendants admitted their negligence in the operation of their vehicle and that this caused some injury to

plaintiff's husband. They denied the extent of the injuries claimed by plaintiff for her husband and that plaintiff suffered any loss of consortium. We will pass without discussion, because no one has raised it, the question of whether the additional hours plaintiff claims she was required to work in the family ice cream business is evidence of the type of damage contemplated by an action for loss of consortium brought by a wife.

The issue is raised as to when it is proper to permit a jury to disbelieve the witnesses where testimony is uncontradicted. The question was exhaustively discussed in *Rickard v. Ellis*, 230 Or 46, 51, 52, 368 P2d 396 (1962). The court there stated as follows:

"* * * The correct principle is stated in *Ferdinand v. Agricultural Insurance Co.*, 22 NJ 482, 126 A2d 323, 62 ALR2d 1179 (1956), which was adopted and applied in *Wiebe v. Seely, Administrator*, 215 Or 331, 343-344, 335 P2d 379 (1958):

" ' "* * * Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury. * * * [Citing cases]. But when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances, and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinary intelligent mind, then a question has been presented for the court to decide and not the jury. * * * [Citing cases]." '

"It is evident from the foregoing statement of the principle that whether uncontradicted testimony is such as to preclude the jury's function in testing the credibility of the witness or witnesses

who gave it will depend upon the nature of the issue in the particular case which the testimony purports to resolve. Two important factors in determining whether the jury should be permitted to disbelieve the witness and draw an inference contrary to the uncontradicted testimony given are (1) the availability of evidence to contradict the witness's statement, and (2) the likelihood that the witness's interest in the litigation may tempt him to testify falsely."

■ We believe the relations between husband and wife brought into question by an action for loss of consortium, whether relating to respective hours worked in a family business or other conjugal associations, are of so intimate a character that the question of damages almost always is one where a jury may properly test the credibility of the witnesses. *Huber v. May*, 239 Or 544, 398 P2d 481 (1965). Not only is the availability of evidence to contradict almost nil, but plaintiff has a direct interest in the outcome and her husband a very material indirect interest as well. We believe it to be a case in which the jury could properly withhold damages.

■ Plaintiff further charges as error the court's admission of parts of a complaint plaintiff's husband filed to recover damages suffered in an accident which occurred three and a half to four years previously. The parts of the complaint admitted showed the location and manner of the accident together with the injuries suffered. The manner of the accident and the injuries suffered were similar to the present case. In both instances plaintiff's husband had been rear-ended while in a stopped position and received injuries to his back. There is no doubt but that the permanency and severity of the previous injuries were material, but plaintiff complains that plaintiff's husband had

already admitted that he had brought an action for damages arising out of the first accident and that he had suffered the injuries specified in said action. The admission of these parts of the complaint could have been nothing more than cumulative and therefore not prejudicial. Plaintiff says parts of the complaint admitted were not relevant. If so, neither were they prejudicial.

■ Plaintiff further claims the court erred in admitting in evidence the husband's complaint against defendants for his damages. For this complaint all material was deleted concerning the extent of his monetary request. It was properly admitted as showing possible bias of the husband, as a witness against the defendants. 98 CJS 488, Witnesses, § 546 (1957).

■ Plaintiff also contends the court erred in not allowing her to prove the increased expense of a domestic servant which was necessitated because of her husband's disability. A domestic's wages are a family expense, ORS 109.040. Both husband and wife are responsible therefor. The loss, not being peculiar to either of them, would not be a proper element of damage in a case for loss on consortium. The husband could have included this loss in his action against defendants.

For the reasons given above, the order of the trial court granting plaintiff a new trial is reversed and the case is remanded with instructions to reinstate the judgment entered on the jury verdict.