CONSUMERS POWER COMPANY v ALLEGAN STATE BANK

Opinion of the Court

See headnotes 7 and 8.

1. Eminent Domain—Probate Court—Commissioners.

It was error for the probate court to permit the questioning of commissioners in a condemnation proceeding.

2. Eminent Domain—Procedure—Court Rules—Question of Law —Evidence.

The procedure to be followed by a judge in condemnation cases is that set forth in a court rule which reads: "Judges of courts of record in which condemnation proceedings have been instituted shall preside over the proceedings in person and shall instruct the jury or commissioners on questions of law and admissibility of evidence" (GCR 1963, 516.5).

3. Eminent Domain—Procedure—Constitutional Law—Court Rules.

The proper procedure to be followed in condemnation cases must accord with that in other judicial proceedings (Const 1963, art 10, § 2; GCR 1963, 516.5).

4. Eminent Domain—Constitutional Law—Court Rules—Commissioners—Cross-Examination.

Now that condemnation proceedings are carried on in courts of record under the control and supervision of the trial judge, the same rule should apply to such proceedings as in other cases; the commissioners stand in the place of a judge or a jury; once they have arrived at their decision, they should not be subject to cross-examination (Const 1963, art 10, § 2; GCR 1963, 516.5).

References for Points in Headnotes

[1] 27 Am Jur 2d, Eminent Domain § 420.

[2, 3] 27 Am Jur 2d, Eminent Domain §§ 375 *et seq.;* 506.

[4, 5] 27 Am Jur 2d, Eminent Domain §§ 408, 409.

[6] 26 Am Jur 2d, Eminent Domain §§ 5, 7, 8.

[7] 27 Am Jur 2d, Eminent Domain §§ 280, 281.

[8] 27 Am Jur 2d, Eminent Domain §§ 404, 419.

5. EMINENT DOMAIN—COMMISSIONERS—CONSTITUTIONAL LAW—COURT RULES—APPEAL AND ERROR.

A court in condemnation cases should follow all the rules pertaining to civil trials, except as otherwise provided by specific statute; permitting attorneys to question the commissioners as to the factors they relied upon in determining just compensation and also to question them as to specific determinations of fact is objectionable, not authorized by law, and error (Const 1963, art 10, § 2; GCR 1963, 516.5).

OPINION FOR REVERSAL IN PART AND AFFIRMANCE IN PART

T. E. BRENNAN AND T. G. KAVANAGH, JJ.

6. EMINENT DOMAIN—COURTS—COMMISSIONERS—DISCRETION.

*A court presently has great discretion in condemnation proceedings and may set aside the commissioners' report, or may permit the amendment of such report; the court's discretion embraces permission for the questioning of the commissioners either by the court or counsel (MCLA 486.252 et seq.).*

7. EMINENT DOMAIN—ASSEMBLAGE—VALUE OF LAND—GAS STORAGE.

Value ascribable to a particular use, such as gas storage, realizable only through the assembly of an entire tract, must be considered in determining a condemnation award if the value of the land is enhanced from the possibility of its coming into the market for such use.

8. EMINENT DOMAIN—ASSEMBLAGE—GAS STORAGE—INSTRUCTIONS—QUESTION OF FACT.

Trial court's instruction to commissioners in condemnation proceeding that "as a matter of law * * * the employment of eminent domain would be necessary to assemble this underground storage field" was inaccurate because the possibility of assembly without eminent domain is a question of fact to be found from the evidence presented; upon remand, the commissioners should be instructed to make a factual determination of the probability of assemblage within a reasonable time at a reasonable price and, if such assemblage is found to be practical without exercising eminent domain, the increment in value due to the particular use should be apportioned among the parcels comprising the entire tract but if they find as a practical matter that the assemblage could not be accomplished in a reasonable time at a reasonable price without exercising eminent domain they should not include any value for use as a gas storage field.

Appeal from Court of Appeals, Division 3, Quinn, P. J., and Holbrook and T. M. Burns, JJ., reversing and remanding Allegan Probate Court, Dwight M. Cheever, J. Submitted November 4, 1971. (No. 33 October Term 1971, Docket No. 52,745.) Decided November 29, 1972.

20 Mich App 720 affirmed.

Complaint by Consumers Power Company against Allegan State Bank and others for condemnation of certain interests in land. Condemnation order granted. Defendants appealed to the Court of Appeals. Reversed and remanded. Plaintiff appeals. Affirmed.

*Hoffman & Hoffman,* for plaintiff.

*John B. Nahan,* for defendants.

ADAMS, J. I agree with Justice T. G. KAVANAGH with regard to the issue of assemblage but am unable to agree with him that the holding by the Court of Appeals, that it was error for the probate court to permit the questioning of the commissioners, was erroneous.

Const 1963, art 10, § 2, provides:

"Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. *Compensation shall be determined in proceedings in a court of record."* (Emphasis added.)

Const 1908, art 13, § 1, provides:

"Private property shall not be taken by the public nor by any corporation for public use, without the

necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law."

Under the Constitution of 1908, condemnation proceedings were inquisitorial in nature. The commissioners were undirected during their deliberations and could carry on with a free hand. Under such circumstances, it was proper to subject their actions to judicial scrutiny after an award had been entered. Now the situation has been completely altered.

In accordance with the language of Const 1963, art 10, § 2, we held in *State Highway Commissioner v Gulf Oil Corp,* 377 Mich 309 (1966), that the procedure to be followed by a judge in condemnation cases is that set forth in GCR 1963, 516.5, which reads:

"Judges of courts of record in which condemnation proceedings have been instituted shall preside over the proceedings in person and shall instruct the jury or commissioners on questions of law and admissibility of evidence."

In the above case, the judge was absent from the bench during the proceedings, even though he began and ended them. We specifically held that "the procedure followed by the judge in this case * * * is not to be condoned in future condemnation cases." (pp 315–316.)

In view of the 1963 constitutional requirement that "compensation shall be determined in proceedings in a court of record", the holding of this Court in *State Highway Commissioner v Gulf Oil Corp, supra,* and GCR 1963, 516.5, the proper procedure to be followed in condemnation cases must accord with that in other judicial proceedings. If this case had been tried to a judge or a

jury, cross-examination of the judge or of the jury after verdict would have been clearly improper.

Most cases dealing with the questioning of a jury involve an affidavit by a juror which would tend to impeach the jury's verdict. In *McDonald and United States Fidelity & Guaranty Co v Pless,* 238 US 264; 35 S Ct 783; 59 L Ed 1300 (1915), the Court stated (pp 267–268):

"For while by statute in a few jurisdictions, and by decisions in others, the affidavit of a juror may be received to prove the misconduct of himself and his fellows, the weight of authority is that a juror cannot impeach his own verdict. The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils. When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial the court must choose between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room.

" * * * But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference."

This case has been frequently cited by state and Federal courts and law journals. It has been interpreted as distinguishing facts which "inhere in the

verdict" and facts which are extraneous, "outside influence". *(Jurors and the Sanctity of Their Verdicts,* Hill, 63 W Va L Rev 261 [1961]).

In *Rakes v United States,* 169 F2d 739, 745 (CA 4, 1948), the Court stated:

"If jurors are conscious that they will be subjected to interrogation or searching hostile inquiry as to what occurred in the jury room and why, they are almost inescapably influenced to some extent by that anticipated annoyance."

In *People v Pizzino,* 313 Mich 97, 105 (1945), the Court stated:

"The rule is well established that jurors may not impeach their verdict by affidavits. To permit this would open the door for tampering with the jury subsequent to the return of their verdict."

See also: *In re Merriman's Appeal,* 108 Mich 454 (1896); *People v Van Camp,* 356 Mich 593 (1959); *Ford Motor Credit Co v Amodt,* 29 Wis 2d 441; 139 NW2d 6 (1966); *Miller v Illinois Central R Co,* 36 Wis 2d 184; 152 NW2d 898 (1967); *West v Alaska,* 409 P2d 847 (Alas, 1966); *In re Will of Florence Hall,* 252 NC 70; 113 SE2d 1 (1960); *Zeiszler v Fields,* 255 Or 540; 469 P2d 34 (1970).

While most cases deal with an attempt to impeach a jury verdict by affidavits, a few cases deal with interrogation of juries.

In *Miller v Blue Ridge Transportation Co,* 123 W Va 428, 437; 15 SE2d 400, 405 (1941), the Court said:

"Time and again it has been held that affidavits of a juror should not be received to impeach a verdict. * * * . If the affidavit of a juror, voluntarily given, is not permissible for the purpose of impeaching a verdict, a trial court should not inquire of a jury as to

the method used in obtaining the verdict. The same public policy prevails in either instance."

In *Hermann v Schroeder,* 175 SW 788 (Tex Civ App, 1915), counsel wanted testimony taken from the jury as to whether the jury understood a charge. The Court said (p 789):

"The jury is presumed to be composed of men of ordinary intelligence, who understand the court's charge. If such practices as here suggested were indulged in, it would soon become intolerable."

See also: *Teeters v Frost,* 145 Okla 273; 292 P 356 (1930).

In summary, *McDonald v Pless, supra,* is the majority rule based upon public policy reasons, *i.e.,* to prevent invasion of privacy of the jury room, inhibiting frank and free discussions and tampering of the jurors.

As previously indicated, now that condemnation proceedings are carried on in courts of record under the control and supervision of the trial judge, the same rule should apply to such proceedings as in other cases. The commissioners stand in the place of a judge or a jury. Once they have arrived at their decision, for the reasons set forth in the various opinions and cases quoted or cited in this opinion, they should not be subject to cross-examination. The rule, as set forth by Judge HOL-BROOK in his opinion in the decision of the Court of Appeals, should be followed. For the reasons set forth in this opinion, the earlier decisions of this Court in *Marquette H & O R Co v Probate Judge,* 53 Mich 217 (1884), and *State Highway Commissioner v Ioppolo,* 366 Mich 487 (1962), have been superseded.

Affirmed and costs to defendant.

T. M. KAVANAGH, C. J., and SWAINSON and WIL-
LIAMS, JJ., concurred with ADAMS, J.

T. G. KAVANAGH, J. *(for reversal in part and
affirmance in part).* We granted leave in this case
primarily to correct the holding by the Court of
Appeals* that it was error for the probate court to
permit the questioning of the commissioners after
their first report.

It does not appear from the record that this
question was submitted to the Court of Appeals,
and it's gratuitous holding thereon in our view can
only serve to confuse the condemnation practice
under this statute.

Historically in Michigan, the commissioners in
condemnation were the judges of both the law and
the facts. *In re State Highway Commission,* 249
Mich 530 (1930), *In re Dillman,* 255 Mich 152
(1931). They were however, subject to some super-
vision by the court, inferring some ability by the
court to delve into the reasoning behind their
decision.

The Constitution of 1963 expanded the role of
the court in condemnation proceedings. In re-
sponse to this expansion, GCR 1963, 516.5 was
amended to require the court to instruct the com-
missioners as to the applicable law, rather than
merely to advise them. The court presently has
great discretion in condemnation proceedings as
shown by MCLA 486.252 *et seq.;* MSA 22.1672 *et
seq.* The court may set aside the commissioners'
report, or may permit the amendment of such
report. Until by statute or rule there are express
provision to the contrary, we hold that the court's
discretion embraces permission for the questioning

* 20 Mich App 720 (1969).

of the commissioners either by the court or counsel.

In *State Highway Commissioner v Ioppolo,* 366 Mich 487 (1962), the trial court allowed the commissioners to be questioned. Although not addressing the issue directly, this Court found that the proceedings were proper, implicitly upholding the propriety of the questioning of the commission.

Such is the rule today.

While in our view the other issues were properly disposed of by the Court of Appeals, only the issue of assemblage warrants further observation.

The Court of Appeals and the trial court correctly stated the applicable rule as to whether the value ascribable to a particular use—gas storage—(realizable only through the assembly of the entire tract) can be considered in making a condemnation award. If the value of the land is enhanced from the possibility of its coming into the market for such use, then value must be considered in determining the condemnation award.

The difficulty in this case arises from the application of that rule to the facts. In the first award, the commissioners granted compensation for the use of the land as a gas storage facility. Upon questioning by counsel, the commissioners stated that it was their opinion that the land could not have been assembled without the exercise of eminent domain. The probate court set aside the award and ordered the commissioners to reconsider their determination, but in instructing the commissioners on the second submission the court stated:

"The Court also has ruled, as a matter of law, that the employment of eminent domain would be necessary to assemble this underground storage field."

It is possible that the commissioners felt bound, in part at least, by this instruction. The instruction is inaccurate.

The possibility of assembly without eminent domain is a question of fact to be found from the evidence presented. Upon remand, the commissioners should be instructed to make a factual determination of the probability of assemblage within a reasonable time at a reasonable price. If such assemblage is found to be practical without exercising eminent domain, the increment in value due to the particular use should be apportioned among the parcels comprising the entire tract.

If they find as a practical matter that the assemblage could not be accomplished in a reasonable time at a reasonable price without exercising eminent domain, they should not include any value for use as a gas storage field.

Reversed in part and affirmed in part.

No costs, neither party having prevailed in full.

T. E. BRENNAN, J., concurred with T. G. KAVANAGH, J.

BLACK, J., did not sit in this case.