Argued and submitted October 17, 1984, reversed and remanded February 6, reconsideration denied March 22, petition for review allowed April 16, 1985 (299 Or 37)

# D.C. THOMPSON AND COMPANY,
*Appellant,*

*v.*

# HAUGE et al,
*Respondents.*

## (C-7286; CA A32426)

695 P2d 574

Elizabeth A. Baldwin, Astoria, argued the cause and filed the brief for appellant.

Blair J. Henningsgaard, Astoria, argued the cause for respondents. With him on the brief was Brownhill & Henningsgaard, Astoria.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

Van Hoomissen, J., dissenting.

**YOUNG, J.**

This is a forcible entry and detainer action. ORS 105.105-105.165. Plaintiff appeals from an order granting a new trial after a jury verdict for plaintiff on defendants' counterclaim. The issue, in its simplest form, is whether, after a verdict is received and the jury is discharged, the verdict may be set aside and a new trial granted because five of the six jurors say that the verdict given was not the one intended.

At the conclusion of a two-day trial, the trial court granted plaintiff a directed verdict on its claim for rent and instructed the jury to return a verdict in favor of plaintiff for $450. Before closing arguments, the trial court explained to the jury that the only issue for them to decide was defendants' counterclaim. The court stated the issue as "whether defendants are entitled to a diminution of rent because of a failure to supply adequate water and sewage." The court later rephrased the issue for the jury by stating that "the only thing that you have to be concerned about is that one area of the counterclaim of the defendants for damages based upon diminished rental value." Closing arguments included an explanation to the jury of the questions in the verdict form. The jury returned its verdict in favor of plaintiff and against defendants on the counterclaim.[1]

---

[1] "We the Jury * * *

"(1) We find that plaintiff is entitled to judgment for rental in the sum of $450_____.

"(2) Questions pursuant to defendant's counter-claim:

"A. Did plaintiff fail to provide to defendants an adequate supply of healthful water?

"YES_____          NO __X__

"B. Did plaintiff fail to provide to defendants an adequate sewerage facility, maintained in good working order to the extent that the facility could be controlled by the landlord?

"YES_____          NO __X__ "

"If your answer to either question A or B is Yes, go to question C. If your answer is No to both questions A and B, you need not answer the remaining questions below, and your foreman should sign the verdict.

"C. Was the fair rental value of the dwelling unit diminished?

"YES_____          NO_____ "

The jury foreman told the trial court that the verdict was agreed to by at least five of the jurors. Although counsel were present, no request was made to poll the jury. The court then received the verdict and discharged the jury.

While defense counsel was still in the courthouse, two of the jurors (the foreman and an other) approached him and said that they believed that the jury had misunderstood or misread the verdict form and that they had intended to vote for defendants and not plaintiff. Defense counsel immediately advised the trial judge, who in turn summoned the two jurors and plaintiff's counsel back to the courtroom. The jurors acknowledged that they had answered questions 2(A) and (B) "No" but said that they did not understand that their vote was effectively for plaintiff. The foreman believed that the jury had overlooked the word "fail" in the questions, although it appears that both jurors believed that all of the jurors had read or had the opportunity to read the verdict form.

Four days later, the entire jury was reconvened. The trial judge explained that the effect of voting "no" was to deny defendants a verdict on their counterclaim and asked each juror if that was what was intended.[2] Although the tape recording of the answers given is not entirely clear, it appears that five of the six jurors voted "no" but intended that the defendants "get some money back" or "recover something." Juror number six did not change her vote. She apparently had voted for defendants from the beginning and had voted "yes" in answering the two questions. The trial judge concluded that five of the six jurors had misunderstood the verdict form,

---

"If your answer is No you need not answer the remaining questions below, and your foreman should sign the verdict. If your answer is Yes, answer questions C-1 and C-2.

"C-1. For how many months was the rental value diminished? (Cannot exceed 19 months)

"C-2. By what percentage was each such months fair rental value reduced? (Cannot exceed 66 2/3% for each month)

"Dated this 13 day of January, 1984.

[2] It does not appear that the jurors were placed under oath before questioning.

which caused them to cast their vote incorrectly for plaintiff.

■ In cases where the verdict is defective because it is "informal" or "insufficient," the trial court may require further jury deliberation. ORCP 59G(4). However, "the right to object to an improper verdict is waived when not made at the time of the return of the verdict * * *." *Big Bend Agric. Coop. v. Tim's Trucks,* 277 Or 17, 20, 558 P2d 844 (1977), *citing Fischer v. Howard,* 201 Or 426, 463, 271 P2d 1059 (1954). Once the verdict is received and filed, "the jury shall be discharged from the case." ORCP 59G(5).

■ In the present case, defendants do not claim that the verdict was informal or insufficient.[3] Rather, their motion for for a new trial is on the grounds of "irregularity" or "misconduct." ORCP 64B provides in part:[4]

> "**Jury trial; grounds for a new trial.** A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
>
> "B.(1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial.
>
> "B.(2) Misconduct of the jury or prevailing party."

Cases dealing with jury irregularity or misconduct state the general rule that jurors cannot, by affidavit or testimony, impeach their verdict. *Sneath v. Phys. and Surg. Hospital,* 247 Or 593, 600, 431 P2d 835 (1967); *State v. Gardner,* 230 Or 569, 371 P2d 558 (1962). The rule, depending on the nature of the irregularity or misbehavior, has exceptions. *Blanton v. Union Pacific Railroad Co.,* 289 Or 617, 630, 616 P2d 477 (1980); *Sneath v. Phys. and Surg. Hospital, supra; State v. Gardner, supra.* An exception to the rule depends on the balancing of two judicial principles.

"It should be made clear that as between the conflicting

---

[3] Neither do defendants' claim that the jury was not properly instructed or that the verdict form was confusing or misleading. Neither is there any claim of impropriety on the part of trial counsel or "irregularity" or "misconduct" by a party.

[4] Defendants' motion was based on ORCP 64B(1), (2) and (5). Section (5) authorizes a new trial when the evidence is insufficient to support the verdict. On appeal defendants argue that the order granting a new trial can be sustained on that ground alone. We disagree. We find sufficient evidence to support the verdict.

principles of allowing the trial judge wide discretion in granting new trials and of protecting the jury system as an effective method of deciding disputes this court believes the latter to be of the greater consequence." *Schmitz v. Yant,* 242 Or 308, 314, 409 P2d 346 (1965).

█    The question is what kind of jury irregularity or misconduct is a ground for a new trial. *State v. Gardner, supra,* reviewed and classified all the Oregon cases that sought the impeachment of verdicts by jury affidavits. From *Gardner* it is sufficient to say that the seriousness of the misconduct decides the question, and only where the misconduct "would violate the 'plainest principles of justice,' " *State of Oregon v. Imlah,* 204 Or 43, 55, 281 P2d 973 (1955), can the verdict be set aside. *Carson v. Brauer,* 234 Or 333, 382 P2d 79 (1963), quoted with approval in *Blanton v. Union Pacific Railroad Co., supra,* 289 Or at 631, furnished guidelines to aid in determining when the misconduct is such that a verdict will be set aside.

> "The kind of misconduct of a juror that will be considered in an attack upon a verdict by a juror's affidavit within the rule set forth in the Gardner and Imlah cases is misconduct that amounts to fraud, bribery, forcible coercion or any other obstruction of justice that would subject the offender to a criminal prosecution therefor. We do not necessarily use the words 'fraud,' 'bribery,' 'forcible coercion' and 'obstruction of justice' in a purely technical sense, but as words that denote such serious breach of the juror's duties that the trial judge would be justified in citing him for nothing less than a contempt of court."

In the present case, the trial court was persuaded by the unsworn statements of five of the six jurors that they had made a mistake, because they had failed to apprehend the meaning of the questions on the verdict form. Accordingly, the jury's mistake was not in the recording of their verdict, *i.e.,* a clerical error; rather, it was a mistake in arriving at the verdict.

█    In the early case of *Ore. Cas. R.R. Co. v. Ore. S. Nav. Co.,* 3 Or 178 (Mult. Co. Cir Co 1869), the court observed that the affidavits of jurors are inadmissible "to show a mistake in making up the verdict."[5]

---

[5] Under more recent case law the question is not viewed as involving the admissibility of a juror's affidavit or testimony. In *Carson v. Brauer, supra,* 234 Or at

"It would be of dangerous tendency to permit jurors to reconsider their verdict after they have been discharged, on the ground that they now have a different conception, either of the facts or the law, from that under which the verdict was rendered. It would be permitting parties and counsel to retry their cases upon *ex parte* arguments addressed to individual jurors, who, from natural commiseration for the losing party, are not only open to new impressions inconsistent with the whole truth of the case, but are liable to be led into concessions and statements, imprudently or carelessly made, which, being once made, it is difficult for them to retract or to explain without appearing discourteous, or even appearing to be partisans in an affair that is not their own." 3 Or at 180.

Obviously, a misunderstanding of the court's instructions may cause the jury mistakenly to render a verdict for the wrong party. However, the fact that the jury misunderstands the court's instruction is not the type of jury misconduct that will justify a new trial or a mistrial. *Biegler v. Kirby,* 281 Or 423, 429, 574 P2d 1127 (1978); *Davis v. Pacific Diesel,* 41 Or App 597, 601, 598 P2d 1228, *rev den* 288 Or 253 (1980).

■ We have found no other Oregon case where the jury, after being discharged, was reassembled and it was determined that it mistakenly entered a verdict for one party when it intended to enter a verdict for the other. We believe that that kind of mistake does not rise to the level of "irregularity" or "misconduct" that permits a verdict to be set aside. The fact is that there has been an opportunity for outside influences after the jury was discharged. To rule otherwise would be to permit jurors to reconsider and repudiate their verdicts after being discharged, on the ground that they now have a different conception of either the facts or the law. In order to avoid the erosion of the finality of jury verdicts, we believe that sound considerations of public policy require us to hold that a misunderstanding of the questions on the verdict form or mistakenly intending to return a verdict for the other party are not sufficient grounds to justify a new trial.

Reversed and remanded with instructions to reinstate the verdict and enter judgment thereon.

345, the court noted that jurors' affidavits are admissible in evidence in order to enable the court to determine whether there are sufficient grounds for a new trial.

**VAN HOOMISSEN, J.,** dissenting.

I respectfully dissent.

Having properly framed the issue, the majority fails to focus on the relevant analysis. "Irregularity in the proceedings of the court," ORCP 64B.(1)—the central issue here—and "Misconduct of the jury," ORCP 64B.(2)—the issue addressed by the majority—raise different questions that require separate analyses. They are not interchangeable merely because both implicate "finality of verdicts." The public policy favoring "finality of verdicts" is not frustrated by a decision upholding the trial court's order allowing a new trial.

The cases cited by the majority involve jury misconduct and are inapposite.[1] Clearly, charges made against jurors, in the nature of collateral attacks on jury verdicts, require a rule placing on the complaining party the burden to show by clear and convincing evidence that he was deprived of a *fair trial* as a result of the alleged misconduct. *See, e.g., State v. Gardner,* 230 Or 569, 576, 371 P2d 558 (1962). The majority's reference to *Blanton's* "guidelines to aid in determining when the misconduct is such that a verdict will be set aside," is, therefore, simply not helpful.

The trial court's order provides in relevant part:

"The Court being satisfied that the written verdict fails to express any conclusion reached by members of the jury * * * the court should exercise its discretion * * * by granting a new trial * * * on the grounds:

"a. That the written verdict *is not the actual verdict* of the jury and that it fails to express the true conclusion reached by the six members of the jury * * *." (Emphasis supplied.)

Significantly, plaintiff does not contend that the verdict expressed the decision of *any* of the jurors.

---

[1] *Blanton v. Union Pacific Railroad Co.,* 289 Or 617, 616 P2d 477 (1980) (allegations that the jury had reached a quotient verdict); *Schmitz v. Yant,* 242 Or 308, 409 P2d 346 (1965) (prejudicial statements of a prospective juror); *Carson v. Brauer,* 234 Or 333, 382 P2d 79 (1963) (various alleged "wrongful influences" on the jury); *State v. Gardner,* 230 Or 569, 371 P2d 558 (1962) (alleged prejudicial statements by a juror).

Oregon courts have not yet developed a rule to govern when a verdict may be set aside and a new trial granted when the jury's statements or affidavits unanimously show that their actual verdict was not correctly recorded.[2] A fair and sound rule must guard the *deliberations* of a jury from retrospective examination. *See, e.g., State v. Gardner, supra.* However, when all jurors agree on a verdict, but then fail to communicate that verdict accurately, it should be within the trial court's discretion to set the erroneous verdict aside and order a new trial.[3]

---

[2]Other courts distinguish between guarding the secrecy of a jury's deliberations and correcting its errors. In *Thorndall v. Peerless Motor Car Co.,* 212 Mass 352, 99 NE 221, 232 (1912), the Massachusetts Supreme Court explained:

"The general rule is that the policy of the law guards so strictly the secrecy of the deliberations of the jury that their conduct, motives or grounds of action in the jury room are sealed from subsequent investigation by examination of the jurors. But this falls short of excluding testimony of affidavits of all the members of the panel to the effect that a mistake has been made in the formal expression of the determination actually reached. Instant correction of manifest errors, either under the eye of the court or by sending out the jury for that purpose, is not infrequent. * * * The fair import of the affidavits presented is, not that the jury misunderstood the court's instructions or failed to apprehend the meaning of 'repudiation' as applied to this contract, but that by reason of a clerical error there was a failure to express with accuracy in writing the conclusion to which all deliberately had given adherence. * * * The affidavits of all the jurors agreeing to the same point were admissible for the purpose of showing the clerical error occurring after the deliberations of the jury had ceased and the verdict had been agreed upon, and of enabling the court to correct it."

*See also Cassamasse v. J.G. Lamotte and Son, Inc.,* 391 Mass 315, 461 NE 2d 785 (1984); *Youtsey Bros. v. Darlington,* 233 Ky 112, 25 SW 2d 44 (1930).

[3]The majority opinion states:

"In the present case, the trial court was persuaded by the unsworn statements of five of the six jurors that they made a mistake, because they failed to apprehend the meaning of the questions on the verdict form. Accordingly, the jury's mistake was not in the recording of their verdict, *i.e.,* a clerical error; rather, it was a mistake in arriving at the verdict." 72 Or App at 121.

There are at least two problems with this analysis. First, the citation to *Beigler v. Kirby,* 281 Or 423, 574 P2d 1127 (1978), to support this characterization of the facts is not persuasive. In *Biegler,* the issue was whether the trial court abused its discretion in denying a motion for mistrial and resubmitting a case to the jury after the jury had initially returned a verdict for the plaintiff but assessed no general or special damages. The trial court had refused to grant a mistrial, stating that "[r]einstruction of the jury would tend to cure any misunderstanding the jury entertained regarding damages." 281 Or at 429. Second, the majority's characterization of the jury's error as a failure "to apprehend the meaning of the questions on the verdict form" is not helpful. To read the word "fail" into the question on the verdict form is no different than it would be to misread "plaintiff" for "defendant." A proper analysis should focus on whether the jury had *agreed* that defendant should prevail and then had failed to express that agreement accurately. The trial court was satisfied that agreement had occurred. We review the court's order only for an abuse of discretion. None is shown here.

There is evidence in the record that the jury had reached a verdict in favor of defendants and that it then failed to record that verdict correctly. On those facts, the trial court should have broad discretion to insure that an injustice is not done. Such a narrow exception to the general rule prohibiting impeachment of verdicts is not vulnerable to the many problems associated with attempting retrospectively to enter the jury room and the minds of the jurors to determine mental processes, *compare State of Oregon v. Imlah,* 204 Or 43, 51-52, 281 P2d 973 (1955); the principle of upholding "finalty of verdicts" is not threatened by such an exception.