Argued and submitted June 4, 1985, affirmed April 1, 1986

## D.C. THOMPSON and COMPANY,
*Respondent on Review,*

*v.*

## HAUGE et al,
*Petitioners on Review.*

## (TC C-7286, CA A32426, SC S31602)
717 P2d 1169

Blair J. Henningsgaard, Brownhill & Henningsgaard,

Astoria, argued the cause and filed briefs for petitioner on review.

Elizabeth A. Baldwin, Astoria, argued the cause and filed a brief for respondent on review.

Before Lent, Presiding Justice, and Linde, Campbell, Roberts,** Carson and Jones, Justices.

LENT, J.

Jones, J., concurred and filed an opinion.

---

** Roberts, J., retired February 7, 1986.

## LENT, J.

There are two issues. The first is whether failure to file a timely undertaking on appeal is a jurisdictional defect. The second is whether after a verdict is received and the jury is discharged, juror affidavits may be received and a new trial ordered based upon juror error in interpreting the effect of the verdict. As to the first issue, we hold that the untimely filing of the undertaking was not a jurisdictional defect. As to the second, we hold that such affidavits or testimony may not be received and thus may not serve as the basis for ordering a new trial.[1]

Plaintiff landlord brought a forcible entry and detainer action, pursuant to ORS 105.105 to 105.165, against defendant tenants and for rent. Tenants counterclaimed for damages for diminution of rent because of landlord's alleged failure to provide adequate water and sewage. At the conclusion of the trial, the trial court granted landlord a directed verdict on its claim for rent in the amount of $450. The trial court provided the jury a special verdict form on which it was to determine the amount, if any, to be offset on the counterclaim. The critical portions of the verdict are the two parts of question two,[2] which address tenants' counterclaim.

---

[1] Because we hold such affidavits or testimony inadmissible, we affirm the Court of Appeals' reversal of the trial court's decision on different grounds. The Court of Appeals incorrectly assumed that *Carson v. Brauer,* 234 Or 333, 382 P2d 79 (1983), changed current analysis so as not to involve the admissibility of a juror's affidavit or testimony. 72 Or App 116, 121 n. 5 (1985).

[2]
"We the Jury * * *

"(1) We find that plaintiff is entitled to judgment for rental in the sum of $450____.

"(2) Questions pursuant to defendant's counter-claim:

"A. Did plaintiff fail to provide to defendants an adequate supply of healthful water?

"YES _____     NO ____X____.

"B. Did plaintiff fail to provide to defendants an adequate sewage facility, maintained in good working order to the extent that the facility could be controlled by the landlord?

"YES _____     NO ____X____

"If your answer to either question A or B is Yes, go to question C. If your answer is No to both questions A and B, you need not answer the remaining

The trial court and both parties' counsel explained the form to the jury. Neither counsel objected to it. The jury subsequently returned a verdict against the tenants by checking the space following "No" on both parts of question two. The trial court received the verdict. Neither counsel asked to poll the jury, which was then discharged.

Within minutes of being discharged, the jury foreman and another juror approached tenants' counsel and told him that the jury had misread or misunderstood the verdict form and had intended to return a verdict for tenants. Tenants' counsel took the two jurors before the trial court which, after calling landlord's counsel, questioned the two jurors. The foreman explained that the jurors had read the form but believed that they had not "registered" the words "fail to" in questions 2A and 2B, thus not understanding their verdict was effectively for landlord.

Four days later, the trial court reconvened and questioned all six jurors. Five of the six jurors indicated they had intended to return a verdict for tenants when they voted "No." One juror said she had intended to return a verdict for tenants and had voted "Yes" to both parts of question two. The trial court concluded that the verdict returned was not the jury's actual verdict. The trial court suggested that tenants' counsel move for a new trial, which he did, and the motion was granted.

---

questions below, and your foreman should sign the verdict.

"C. Was the fair rental value of the dwelling unit diminished?

"YES _____     NO ___ X ___

"If your answer is No you need not answer the remaining questions below, and your foreman should sign the verdict. If your answer is Yes, answer questions C-1 and C-2.

"C-1. For how many months was the rental value diminished? (Cannot exceed 19 months)

_____

"C-2. By what percentage was each such months fair rental value reduced? (Cannot exceed 66 2/3% for each month)

_____     _____

_____     _____

_____     _____

"Dated this *13* day of *January, 1984.*"

A divided panel of the Court of Appeals reversed. The majority held that the verdict should be reinstated because the allegation of error constituted an insufficient basis upon which to order a new trial and because of the policy of protecting jury proceedings. The court did not address tenants' contention that landlord's failure to file a timely undertaking was a jurisdictional defect. The dissent would have upheld the trial court's judgment and asserted that a trial court should have broad discretion to avoid the injustice of a jury's failure correctly to record its verdict.

█  Tenants' argument that landlord's failure to file a timely undertaking deprived the Court of Appeals of jurisdiction is untenable. Landlord filed the appeal and notice of appeal within the prescribed time but did not file the undertaking required by ORS 46.250(4)(a) until six days later. ORS 46.253(1) provided that the "Court of Appeals has jurisdiction over a case when the notice of appeal is delivered in accordance with ORS 46.250." The language of ORS 46.250, which allowed the court to waive the undertaking, ORS 46.250(4)(b), while mandating service and filing of the notice of appeal, ORS 46.250(3), implied that only the latter is jurisdictional.[3] *Compare McQuary v. Bel Air Convalescent Home, Inc.,* 296 Or 653, 657, 678 P2d 1222 (1984).

The statutory grounds upon which a motion for a new trial may be based are provided in ORCP 64B. ORCP 64B.(1) addresses irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, which prevented the party from having a fair trial. ORCP 64B.(2) provides that in the event of misconduct of the jury or adverse party a former judgment may be set aside and a new trial granted. *See, e.g., Carson v. Brauer,* 234 Or 333, 382 P2d 79 (1963); *State v. Gardner,* 230 Or 569, 371 P2d 558 (1962).

█  The present case does not involve misconduct of the jury. The Court of Appeals thus incorrectly analogized the present case to cases involving misconduct. Where misconduct is alleged, the focus is on the sufficiency of the evidence and the level of misconduct. *See Carson v. Brauer, supra; Blanton v. Union Pacific Railroad,* 289 Or 617, 616 P2d 477

---

[3] In this respect appeals from district court to the Court of Appeals are now governed by ORS chapter 19. Or Laws 1985, ch 734, § 16.

(1980). This case properly involves only a claim of irregularity in the proceedings under ORCP 64B.(1).

ORCP 64B.(1) consists of two parts, each divided into subparts. The first part of ORCP 64B.(1) inquires into any "[i]rregularity in the proceedings of the court, jury or adverse party" which prevented a party from having a fair trial. The second part of ORCP 64B.(1) asserts as grounds for a new trial "any order of the court, or abuse of discretion" which prevented a party from having a fair trial. Both parts are qualified by the introduction to ORCP 64B., which states that the cause upon which a motion for a new trial is raised must materially affect the substantial rights of the party so moving.

In the present case, no claim of irregularity in the proceedings of the court or adverse party has been asserted, and we are not concerned with any order of the court or abuse of discretion as giving rise to the motion for a new trial. We are concerned here only with the claim of irregularity in the proceedings of the jury.

The precise nature of the asserted irregularity is difficult to express. Two jurors indicated to tenants' counsel their belief that the jurors had misinterpreted questions 2(A) and 2(B) of the special verdict form and that by answering each part "NO" had intended to return a verdict for tenants. The two jurors, and later five of the six jurors, expressed their belief that they had unintentionally disregarded the words "fail to" when reading the questions:

"(2) Questions pursuant to defendant's counter-claim:

"A. Did plaintiff *fail to* provide to defendants an adequate supply of healthful water?

"YES _____ NO ___X___

"B. Did plaintiff *fail to* provide to defendants an adequate sewage facility, maintained in good working order to the extent that the facility could be controlled by the landlord?

"YES _____ NO ___X___ "

(Emphasis added.)

It is clear from the outset that the alleged error cannot be classified as simple clerical error. Clerical error may

exist in those cases where the jury has agreed to a verdict and the jury foreman inadvertently signs the wrong verdict form, or otherwise mistakenly records the expressed verdict of the jurors. Here the jury foreman correctly recorded the answers expressed by five of the six jurors. The error was not in the recordation of the verdict but in the deliberation giving rise to the recordation.

Expressed in terms of irregularity in the proceedings of the jury, ORCP 64B.(1), the jury's deliberations were defective in that the jurors agreed to a verdict but misinterpreted the means of expressing that verdict, i.e., the special verdict form. Consequently, an inquiry into the alleged irregularity must address the jurors' interpretation of the verdict form, thus implicating the jurors' mental processes involved in their deliberations.

The issue of whether juror affidavits or testimony, alleging that the jurors misinterpreted questions on a special verdict form and did not return their intended verdict, may provide an appropriate foundation upon which to order a new trial requires a two-fold analysis.[4] The threshold inquiry is whether such affidavits or testimony may be received by the trial court. Only if the affidavits or testimony are admissible must we inquire whether such allegations of juror error are sufficient to warrant setting aside the verdict and ordering a new trial.

The competence of juror affidavits or testimony seeking to impeach the jury's verdict has been addressed by this court in the context of juror misconduct. The cases involving juror misconduct, while not strictly analogous, are helpful in resolving the issue of the admissibility of juror affidavits or testimony in the context of this case.

In *State v. Gardner,* 230 Or 569, 371 P2d 558 (1962),

---

[4] ORCP 64D. provides that when a motion for a new trial is raised based upon ORCP 64B.(1) through (4), "it shall be upon affidavit, setting forth the facts upon which the motion is based." Clearly, affidavits relevant to the facts of the instant case would be those of the jurors. Here there were no such affidavits provided, except that of defense counsel. Under ordinary circumstances a motion for a new trial based only upon the affidavit of counsel would be inadequate to raise the question presented by the jurors' statements. In this case, however, the absence of juror affidavits does not change the result, and we shall consider, for the purposes of this case, the unsworn statements of the jurors to be the equivalent of affidavits or testimony.

this court noted that while affidavits may generally be considered by the trial court, one definite limitation to their admissibility has been set, which is expressed in Rule 41 of the Uniform Rules of Evidence:

> " 'Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined.' Handbook of the National Conference of Commissioners on Uniform State Laws, p. 188 (1953)."

230 Or at 575-76.

A commentator has noted that the "effect of Uniform Rule 41 is to make certain types of jury misconduct immune from challenge by rendering incompetent the very evidence that must be used to raise the issue." Kirkpatrick, Oregon Evidence 222 (1st ed 1982). In *United States v. Duncan,* 598 F2d 839 (4th Cir), *cert den* 444 US 871 (1979), the court framed the distinction as follows:

> "While a juror may testify that she had consulted a dictionary and related her findings to the group, neither she nor any of the other members of the panel can testify to the effect the extraneous influence had on the verdict or on their individual deliberations."

598 F2d at 866.

In *Blanton v. Union Pacific Railroad Co., supra,* this court applied the rule in affirming the refusal of the trial court to receive affidavits or testimony of jurors for the purpose of impeaching their alleged quotient verdict. Because a "key element of a quotient verdict is that the jurors agree to be bound by their computations *before making them,*" *id.* at 631 n. 9 (emphasis in original), affidavits supporting such a verdict implicate the mental processes and influences involved in the deliberations of the jury in reaching its verdict.[5]

---

[5] *Compare Carson v. Brauer,* 234 Or 333, 382 P2d 79 (1963) (affidavits received to show oral communication between jurors, but found insufficient to warrant ordering a new trial), *with Winters v. Basaillon,* 152 Or 578, 54 P2d 1169 (1936) (affidavits of jurors as to what occurred during their deliberations may not be received to impeach their verdict).

The same restriction on admissibility of juror affidavits or testimony should apply where the alleged defect in the proceedings is irregularity rather than misconduct. The underlying reason for restricting the receipt of juror affidavits or testimony which relate to the mental processes of the jurors or the effect of extraneous influences on their deliberations is to protect the sanctity and privacy of the jury's province. By permitting searching hostile inquiry into a jury's verdict

"* * * there would be an open invitation to disappointed litigants and their counsel to contest the verdict. The invitation would carry in its wake the temptation to tamper with jurors and it would open the way for pressures and fraudulent practices to induce members of the jury to repudiate their decisions."

*State v. Gardner, supra,* 230 Or at 574-75. Allowing such an interrogation ultimately affects the overriding consideration of giving finality to litigation. *See State v. Gardner, supra; Blanton v. Union Pacific Railroad, supra.*

Other courts have expressed the same concern. In *Kerzmann v. Rohweder,* 321 NW2d 84 (ND 1982), the court distinguished affidavits which went to the jurors' mental processes in arriving at a form of verdict from affidavits which sought to show overt acts, conduct, events, and statements that are objectively ascertainable. Accordingly, the court determined that affidavits supporting the allegation that the jurors misunderstood the ramifications of their verdict were inadmissible. 321 NW2d at 88.

"Although injustice may at times result from thus holding verdicts solemnly rendered unassailable by affidavits of jurors as to their not understanding the charge or as to their reasons for agreement, we deem it the better rule, and subject to less liability to injustice, that a verdict actually rendered shall be conclusively deemed to be a verdict, and beyond impeachment by the declaration of a juror as to a mental condition existing when he agreed upon a verdict, or as to his reasons for so agreeing."

*State v. Forrester,* 14 ND 335, 103 NW 625, 626 (1905), quoted in *Kerzman v. Rohweder, supra,* 321 NW2d at 88.

In *Ford Motor Credit Co. v. Amodt,* 29 Wis 2d 441, 139 NW2d 6 (1966), the court held upon similar reasoning that the jury is not permitted to initiate a challenge to its verdict after

the jury has returned its verdict and has been discharged. In *Pittsburgh National Bank v. Mutual Life,* 493 Pa 96, 425 A2d 383 (1981), the court determined that juror affidavits were inadmissible as to facts that inhere in the verdict. *Accord, Cyr v. Michaud,* 454 A2d 1376 (Me 1983); *Consumers Power Co. v. Allegan State Bank,* 388 Mich 568, 202 NW2d 295 (1972). *See also* 18 ALR 3d 1132 (1968).

■        In this case, receipt by the trial court of the jurors' unsworn statements called into question the mental processes of the jurors in reaching the answers recorded in their verdict. The trial court's inquiry by virtue of the jurors' unsworn statements unjustifiably intruded upon the jury's province. Such an exercise of the trial judge's discretion subjects jurors to the searching inquiry and attack sought to be avoided by the rule foreclosing reconsideration of a verdict based upon a juror's mental condition existing when he agreed to the verdict.

While recognizing that injustice may result to individual litigants, we consider the potential impact on jury verdicts and the jury system to be of graver concern. We have previously held that "as between the conflicting principles of allowing the trial judge wide discretion in granting new trials and of protecting the jury system as an effective method of deciding disputes, this court believes the latter to be of greater consequence." *Schmitz v. Yant,* 242 Or 308, 314, 406 P2d 346 (1965). The risk that improper or erroneous consideration "may or may not find its way into a jury's deliberation is simply a risk that litigants assume when they submit their disputes for determination by the jury system." *Carson v. Brauer, supra,* 234 Or at 346.

Because we hold that juror affidavits or testimony seeking to impeach a jury's verdict based upon allegations that the jurors misunderstood the effect of their verdict are inadmissible, we need not reach the effect of the absence of affidavits or the sufficiency of these jurors' statements to establish an adequate basis for order of a new trial.[6]

---

[6] Because of the basis of the court's decision, it is not necessary to the opinion to discuss the sufficiency of the jurors' statements to establish that they had intended to find for the tenants; however, Justice Campbell, Justice Jones and this writer are struck by certain inconsistencies in the jurors' conduct and statements. First of all, one juror stated that she intended to hold for the tenants and, accordingly, voted to answer

Affirmed.

**JONES, J.,** concurring.

I concur completely with the majority opinion, but write separately only to call attention to the fact that the legislature, for some unknown reason, in the last moments of the 1981 legislative session deleted proposed OEC Rule 606(b), which was identical to its federal counterpart. FRE 606(b) reads:

> "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or to dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes."

The rule renders a juror incompetent to testify about juror deliberations except concerning whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Had Rule 606(b) been enacted and applied, this case should never have arisen. The jurors were neither competent to testify nor to state to the court that they misunderstood the effect of their verdict.

I further question the procedure utilized in this case in "making the record." From what I can ascertain from the audio record, two jurors, after "ex parte" communication with defense counsel, approached the bench immediately after the jury had been discharged and made statements to the court.

---

both questions "yes." Obviously, she understood the questions. Unless the other jurors did not discuss with her her reasons for wanting to return "yes" answers, it should have become apparent during deliberations that the other five were ignoring the words "fail to." Next, if the jurors intended to find for the tenants by their answers to questions (2)A and B, and believed that they had, by those answers, found for the tenants, it is passing strange that they did not question how on the verdict form they were to determine the diminishment in rental value caused by inadequate water and sewer facilities, so as to give practical effect to their findings for the tenants.

The statements were neither given under oath, nor given in the presence of the parties or plaintiff's counsel. Six days later all the jurors were summoned back to court, but once again they were not sworn. They simply made statements.

The proper procedure to follow in "making a record" of possible juror misconduct or for setting aside verdicts for irregularity is for the court to call all the lawyers, all the parties and all the jurors back into open court, to swear all the jurors, to record the proceedings and to allow counsel for both sides an opportunity to ask only questions which are permissible within the ambit of this decision or 606(b) if it is enacted.

As Professor Kirkpatrick cautions:

"It should be noted that contacting jurors after a trial to determine whether misconduct may have occurred is often prohibited by local court rule. *See, e.g.,* Rule 2.02, Multnomah County Circuit Court Rules. *See also* DR 7-108(D), (E), (F) and (G) of the Code of Professional Responsibility; Opinion No. 142, Oregon State Bar Legal Ethics Opinions, PROFESSIONAL RESPONSIBILITY MANUAL (1981). In *Niemela v. Collings,* 267 Or 369, 517 P2d 268 (1973), the court held that a juror's affidavit taken in violation of local court rule will not be considered in ruling upon a motion for a new trial."

Kirkpatrick, Oregon Evidence 223 (1982).

Lawyers should not engage in unsolicited ex parte interrogations of jurors after disappointing verdicts. If misconduct or irregularity is brought to counsel's attention, the court should be notified, and the court should summon the jurors back to court and proceed as suggested.