Argued July 11, affirmed September 20, 1967

# SNEATH, *Appellant, v.* PHYSICIANS AND SURGEONS HOSPITAL, *Respondent.*

431 P. 2d 835

*Roger Tilbury,* Portland, argued the cause for appellant. With him on the briefs was John Paul Jones, Portland.

*George M. Joseph,* Portland, argued the cause for respondent. With him on the brief were Robert H. Hollister and Hugh L. Biggs, Portland.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

HOLMAN, J.

Plaintiff in this negligence action appeals from a judgment entered upon a jury verdict for defendant hospital.

Subsequent to an operation upon plaintiff's skull, she contracted a staphylococcus infection in the operative area. At trial, she sought to prove that the cause of the infection was the lack of proper antiseptic procedures.

Plaintiff's first assignment of error is the court's failure to admit in evidence the opinion of a clinical microbiologist as to the source of plaintiff's infection. By way of a hypothetical question the witness was told

the general type of infection from which plaintiff suffered, the number, proximity and general location within the hospital of other patients who had a similar infection, and the procedures used within the hospital in the care of plaintiff and the other patients which were claimed to be violations of sterile techniques. The witness was then asked if she had an opinion as to the source of plaintiff's infection. Defendant objected, contending that the witness was not qualified to answer the question, since only a physician could have knowledge of plaintiff's particular condition and sensitivity to the infection. The objection was sustained by the court and the plaintiff made an offer of proof.

Defendant now admits that a person other than a medical doctor might be qualified to answer the question but insists that the witness, by her own testimony, indicated that she was not qualified to answer without first having the benefit of a medical doctor's observations. During the witness's rambling discourse on the cooperation between the patient's doctor and a microbiologist in the tracing of infection, there are statements which indicate that it is necessary for the microbiologist to have certain medical information from the patient's doctor, which was not furnished to the witness, before it would be possible to trace the exact source.

The following is a part of the witness's testimony concerning her qualifications as an expert in the field of tracing infection.

"Q (By Mr. Jones) In your experience in hospitals—you worked in one, as you indicated, eleven years—you were a clinical bacteriologist?

"A Clinical microbiologist in charge of the entire department.

"Q And was it your job to trace source, or what was your job?

"A Well, my job was to head the division to see that all the cultures were done properly; to teach the staff on the control of cross infection; to teach some clinical microbiology to nurses and interns and medical technology students; and to also control the environment and help the infection control committees; and I did all of that.

"Q Did you trace source of infection?
"A Yes, I did.

"Q This was part of your regular job?
"A Yes, it was.

"Q After you got the culture, you ran it through the particular tests mentioned?
"A Yes.

"Q Then you attempted to locate the source?
"A Yes."

During the offer of proof she testified as follows:

"Q (By Mr. Jones) Do you have an opinion as to whether or not this source of Mrs. Sneath's staphylococcus infection coagulase positive could be probably, or more likely than not could be determined?

"A Well, I would like to be very general in my answer so that I will be accurate.

"Q First of all, state whether or not you have an opinion as to whether it could be traced.
"A Yes, I have an opinion.

"Q What is your opinion?
"A I would like to say that any time that you do not have good isolation procedures on any patient you can have a cross infection develop, and if in the case of Mrs. Sneath—and it's very true I never saw the woman, I didn't see the environment, but if there was a break in technique, it is very likely and it is easy for her to get an infection.

If hands were not washed when they touched her, went in and out of the room, and isolation techniques were not good, if there wasn't a sink in the room, if the nurse was not capped and gowned, it is a known fact, it is proven in the literature by doctors and bacteriologists that you can get a cross infection.

"THE COURT: That wasn't the question put to you, Mrs. Litsky. The question put to you was this: Was this hypothetical question presented to you the probable cause of her infection. Now, this means a legal probable cause. It isn't what you think, but was it the probable cause. Can you answer that question?

"THE WITNESS: Yes, it is. In my opinion, it is.

"THE COURT: That's all that was asked of you. Now, Mr. Biggs, you can cross-examine.

"BY MR. BIGGS:

"Q  Mrs.—

"A  Litsky.

"Q  You did not see this patient? You did not know her condition at the time she developed an infection, is that correct?

"A  That is correct.

"Q  You don't know what the strains of bacteria were from any one of these various sources, possible sources that counsel referred to, do you? You don't know?

"A  No, I do not.

"Q  You don't know what strain of bacteria she herself showed on the—

"A  No.

"Q  So it is possible, bacteria being everyplace as your studies showed you, that it could be from many different sources or from any source, isn't that true?

"A  It could be from many sources.

"Q Do you know bacteria is on the body of patients?

"A Yes, I know that.

"Q So that all you are doing in expressing an opinion of this kind is saying because there were from the hypothetical question many sources of infection inside the hospital, statistically it is more likely that some of those bugs got on her body than from something outside or some that she had herself? That is what you are saying, is it not?

"A I am saying that.

"Q That is the basis of your opinion?

"A A break in technique can cause a cross infection.

"Q Can cause a cross infection?

"A Yes.

"Q But nobody can say that it did in this case?

"A And they can't say it didn't in this case.

"MR. BIGGS: That's the point. That's all.

"BY MR. JONES:

"Q Can you say it was more likely than not?

"A Yes, because the bacteria which the patient has on herself is not as dangerous to her as the bacteria she would pick up from a nurse who would walk into an infected room and out again without washing her hands."

■ The totality of the witness's testimony convinces us that she was competent to give the opinion to which she testified in the offer of proof, and that it was error to withhold it from the jury's consideration. She did not testify that the infection came from a particular source within the hospital but only that it was more probable that the infection came from within the hospital than from without the hospital or from plaintiff's own person. The real import of her opinion was an evaluation of the procedures used by defendant in the

care of patients as the procedures related to the spread of infection. A physician's findings were not needed to underlie her opinion, since the witness did not attempt to trace plaintiff's infection *to a particular source* within the hospital.

■ The error, however, was not prejudicial. Two other expert witnesses, who were physicians, gave substantially the same testimony as that which was excluded. One had been the chairman of the infection committee at three different hospitals over a total period of six years. The other was a chief medical investigator for the State of Oregon. We do not believe the exclusion of the testimony made any difference in the result reached by the jury.

■ Plaintiff's next assignment of error was the court's refusal to submit to the jury the question of whether plaintiff's condition resulting from the aneurysm was aggravated by the staphylococcus infection. The trial court instructed the jury that there was no issue of aggravation in the case. The basis for the court's instruction was the court's belief that plaintiff had not pleaded aggravation. The complaint contained the following statement:

> "* * * plaintiff is bedridden, lame and enfeebled, and *has been prevented from recovering from her aneurysm operation,* is grossly debilitated, suffered pneumonia while in defendant's hospital, has required and will continue to require constant care and attendance, has and will continue to have great pain and suffering, and has been and will be permanently disabled for the remainder of her life, to plaintiff's general damages * * *."
> (Emphasis ours.)

Plaintiff claims the italicized language alleged aggravation. There is no allegation that the condition she

suffered as the result of the aneurysm was aggravated by the infection. The complaint only alleges that plaintiff was prevented from recovering from her operation. There was no error.

■ Plaintiff next contends instructions given in answer to questions asked by the jury during deliberation were error. Counsel for plaintiff were present and took no exception. There is now no basis for any claim of error.

Plaintiff next assigns as error the court's refusal to allow her motion to recall the jurors to determine the basis of their decision. The motion was supported by the affidavit of plaintiff's son. He swore that subsequent to trial he had conversations with four of the jurors who told him the jury had decided the defendant was negligent but had not returned a verdict for plaintiff because they thought plaintiff had to prove all of her claims of damages before she could recover for any of them.

■ The plaintiff, in effect, is asking that the jurors be brought back for the purpose of impeaching their verdict. Affidavits of jurors as to what occurred during their deliberations may not be received to impeach their verdict. *State v. Imlah,* 204 Or 43, 50, 281 P2d 973 (1955). If their affidavits are not admissible, their testimony is not. There are certain exceptions to the rule: *Schmitz v. Yant,* 242 Or 308, 314-315, 409 P2d 346 (1965); *Carson v. Brauer,* 234 Or 333, 345, 382 P2d 79 (1963); *State v. Gardner,* 230 Or 569, 573-574, 371 P2d 558 (1962); but failing to follow the court's instructions is not one of them. *Winters v. Bisaillon,* 152 Or 578, 580, 54 P2d 1169 (1936).

The judgment of the trial court is affirmed.