Submitted on remand from the Oregon Supreme Court February 24, reversed and remanded in part; otherwise affirmed September 8, Bremner's petition for reconsideration, Charles' petition for reconsideration and Pendleton Community Memorial Hospital's petition for reconsideration denied December 15, 1993, all petitions for review denied February 22, 1994 (318 Or 381)

Adam Charles BREMNER,
by and through
his guardian ad litem Deborah A. Bremner,
Deborah A. Bremner and Brian G. Bremner,
*Appellants,*

*v.*

Ellen CHARLES, M.D.,
Joseph H. Diehl, M.D., and
Pendleton Community Memorial Hospital,
an Oregon non-profit corporation,
*Respondents.*

(86-163; CA A45607)

859 P2d 1148

Jossi Davidson and Gracey & Davidson, Silverton, for appellants.

Jeffrey S. Eden and Cooney, Moscato & Crew, P.C., Portland, for respondent Ellen Charles.

Lindsey H. Hughes, Robert M. Keating and Hallmark, Keating & Abbott, Portland, for respondent Pendleton Community Memorial Hospital.

Mildred Jean Carmack and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, for respondent Joseph H. Diehl.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

**ROSSMAN, P. J.**

This case was remanded for us to consider the assignments of error that were neither addressed in our previous opinion, 104 Or App 75, 799 P2d 188 (1990), nor disposed of by the Supreme Court in its opinions, 312 Or 274, 821 P2d 1080 (1991), *adhered to* 313 Or 339, 832 P2d 454 (1992), *mod* 315 Or 291, 844 P2d 204 (1993). *See also Bremner v. Charles (S39718)*, 315 Or 288, 844 P2d 203 (1993).

Plaintiffs are a mother and child who brought this medical malpractice action to recover for brain damage suffered by child as a result of allegedly negligent care that mother received during her pregnancy, labor and delivery. At trial, the court bifurcated the issues of liability and damages. It also excluded child from the courtroom during the liability phase of the trial. The jury returned a verdict for defendants.

Plaintiffs appealed and assigned error to, among other things, the bifurcation and exclusion. In our first opinion, we concluded that the bifurcation had placed plaintiffs at a disadvantage and that the trial judge had erred in excluding child from the courtroom, especially when the judge had not seen child and had no evidence that his appearance would be disruptive. We reversed the trial court on the ground that, when considered together, those two rulings deprived plaintiffs of a fair trial. 104 Or App at 81. Because of our disposition of the appeal, we did not address plaintiffs' other assignments of error. The Supreme Court reversed our decision on the ground that the trial court had not abused its discretion either by ordering the bifurcation or by excluding child from the courtroom. On remand, we address plaintiffs' remaining assignments of error.

■ Plaintiffs challenge the trial court's decision to grant each party additional peremptory challenges to potential jurors. They also take issue with the manner in which the challenges were exercised. We find no error. Under ORCP 57D(2), the trial court had discretion to allow additional peremptory challenges.[1] Plaintiffs suggest, and we can find,

---

[1] ORCP 57D(2) provides, in part:

"Where there are multiple parties plaintiff or defendant in the case or where cases have been consolidated for trial, the parties plaintiff and defendant must join in the challenge and are limited to a total of three peremptory challenges,

no basis for concluding that the court's discretion in that matter was improperly exercised. As for the order in which the challenges were employed, ORCP 57D(3) provides, in part: "[T]he plaintiff may challenge one [juror] and then the defendant may challenge one, and so alternating until the peremptory challenges shall be exhausted." That pattern was followed in this case. However, because the greater number of defendants enabled them, as a group, to exercise the last three challenges consecutively, the court specified that plaintiffs could pass and reserve their last challenge until defendants had exhausted theirs. Although plaintiffs were allowed the final challenge, they neither exercised it nor made a record of any dissatisfaction with the jury that was impaneled.

Plaintiffs next challenge two evidentiary rulings. The first ruling disallowed the testimony of a public health nurse who would have explained the public health clinic's protocol regarding the evaluation of fundal growth patterns. The second "ruling" was actually an acceptance of the parties' stipulation that, in keeping with the court's first ruling, all non-physician witnesses would be prohibited from expressing an opinion about the proper practices and procedures that would have been required of any physician who observed the fundal growth pattern that was exhibited in this case.

The transcript shows that the nurse's testimony was offered by plaintiffs "to establish the standard of care that has to relate to [physicians] insofar as it concerns prenatal care." Defendants challenged the competency of the witness to offer such testimony and also objected to the testimony as hearsay, irrelevant and lacking in foundation. The court excluded the testimony on the ground that the witness' explanation of the practices of a public health clinic

> "does not establish a standard of care for physicians, nor does it establish whether [defendants'] activities fall below that standard, nor am I persuaded that the witness is otherwise qualified to testify as to [the] standard of care of physicians."

---

*except the court, in its discretion and in the interest of justice, may allow any of the parties, single or multiple, additional challenges* and permit them to be exercised separately or jointly." (Emphasis supplied.)

The parties' stipulation acknowledged that that ruling applied to (and therefore prohibited) testimony by other non-physicians regarding the standard of care that is applicable to physicians.

■     We note that plaintiffs did not attempt to use the testimony of their witness to establish the fundal growth pattern evaluation standards that are likely to be used by nurses providing prenatal care in other counties' public health clinics. Instead, the nurse's testimony was offered solely for the purpose of establishing the standard of care for *physicians* working in the field of prenatal care. Plaintiffs rely on *Creasey v. Hogan*, 292 Or 154, 637 P2d 114 (1981), as support for their argument that the testimony should have been admitted for that purpose. In *Creasey*, an orthopedic surgeon was allowed to express an opinion as to whether the defendant, a podiatrist, had properly performed a certain procedure. The court held:

> "Where the principles, techniques, methods, practices or procedures of one branch of the healing arts concur or are generally the same as those of another branch of the healing arts, in a malpractice case against a practitioner in one branch, opinion evidence on a point concerning such matters from a practitioner in another branch is admissible." 292 Or at 156.

We are unpersuaded by plaintiffs' suggestion that nurses and physicians occupy two "branches" of the healing arts in a manner comparable to podiatrists and orthopedic surgeons, and that the "principles, techniques, methods, practices or procedures [of nurses and physicians] concur or are generally the same." Although there may be an appropriate case for allowing non-physician witnesses to testify about the standard of care applicable to physicians, this is not that case. The witness did not testify that she was familiar with physicians' standards of care, and the testimony of other witnesses established that the purpose of the protocols about which the witness would have testified was to tell nurses when to refer a patient to a physician. The trial court's rulings were not error.

■     Plaintiffs next assign error to the court's decision to exclude the testimony of two witnesses who would have recounted conversations that they had with mother and

statements that she made regarding problems she experienced during her pregnancy. Plaintiffs argue that the witnesses' testimony should have been admitted as consistent statements offered to rebut defendants' "express or implied charge * * * of recent fabrication." OEC 801(4)(a)(B).[2] For the reasons discussed below, we agree.

One of the primary issues at trial was whether mother had informed her physician, defendant Charles, that she was concerned about the movement of the fetus. Witnesses for both sides established that complaints regarding lack of fetal movement are serious and need to be evaluated carefully. Mother testified that during her pregnancy she had been worried about the fetus' lack of movement and had mentioned her concerns to Charles on several occasions. Charles testified that she neither remembered nor charted any such comments by plaintiff; she therefore concluded that mother had not voiced the complaints. In his opening statement, counsel for Charles told the jury that

> "the records will show, *notwithstanding what may be said now*, that [mother] was being seen at the Yellowhawk Clinic * * * and nowhere is there a mention and [*sic*] any record there of the diminished fetal movement. * * * *And the first time that* a search of *the records will show [evidence of such a complaint], is after [the birth]*." (Emphasis supplied.)

Later, Charles' counsel consumed fifteen pages of transcript cross-examining mother on the single point that contemporaneous medical records did not support her claim that she had mentioned her concerns to Charles. Counsel raised that point throughout the trial, with other witnesses, and made several references to the "variations" between mother's testimony and the medical records. Defense counsel's tactics were a textbook example of a charge of recent fabrication. By repeatedly challenging the truthfulness of mother's assertion that during the pregnancy she had expressed to her physician

---

[2] OEC 801(4)(a)(B) provides that a statement is "not hearsay" if:

"(a) the declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is:

"* * * * *

"(B) consistent with the testimony of the witness and is offered to rebut an inconsistent statement or an express or implied charge against the witness of recent fabrication * * *."

concerns about reduced fetal movement, counsel implied that mother had contrived that story after child's birth. Accordingly, any relevant and otherwise admissible testimony that would have rebutted that "express or implied charge * * * of recent fabrication" was admissible under OEC 801(4)(a)(B). *See Powers v. Officer Cheeley*, 307 Or 585, 771 P2d 622 (1989).

We turn to the proffered testimony. Witness Bronson, who described herself as a friend of mother's, testified:

"Q: During her pregnancy with Adam, did you have any conversations with Mrs. Bremner about her feelings regarding the pregnancy?

"A: Yes, I did.

"Q: Now, did Debbie ever talk to you about any problems or concerns she was experiencing during the pregnancy with Adam?

"A: Yes, she did. I recall —

"[Defense counsel]: Just a moment. Your honor, I think this would be hearsay. It may not be relevant to the issues before the jury."

The court sustained defense counsel's "objection." In an offer of proof, the witness continued:

"Q: Now, Mrs. Bronson, would you please describe the substance of conversations with Mrs. Bremner regarding any concerns she expressed during her pregnancy that you can recall now?

"A: I can remember Debbie telling me that she had had two normal pregnancies, and *she felt something was wrong.*

"Q: Did she ever talk in more detail about what she felt was wrong?

"A: She probably could have, but that's the only — that's the only part I can honestly say I remember.

"* * * * *

"A: We were just discussing about if she had told her doctor, you know, what she had told me. *And I just asked her, 'Did you tell your doctor?' and she said, 'Yes, I did.' "* (Emphasis supplied.)

The trial court excluded that testimony on the ground that (1) there had been no expressed or implied charge of recent

fabrication, so the testimony was not admissible under OEC 801(4)(a)(B), and (2) the testimony was not relevant to the issue of whether plaintiff had complained to Charles that the fetus was not moving as much as it should have been.

After that ruling, plaintiff's counsel advised the court that a second witness, mother's mother (grandmother), would have testified that, during the pregnancy, mother had expressed concerns about reduced fetal movement:

> "Your Honor, we had Mrs. Bremner's mother. She's not available at the moment. She was available, and we would, after the Court's ruling regarding Mrs. Bronson, we assumed that * * * it would not be necessary to bring back another witness who would testify essentially as did Mrs. Bronson regarding conversations between herself and Mrs. Bremner prior to the birth of Adam Bremner, and in which various problems and concerns were discussed including Mrs. Bremner's perception of the reduced fetal movement. * * * [T]he witness, I believe, *would have testified that she did have conversations with her daughter and her daughter discussed reduced fetal movement.*" (Emphasis supplied.)

Defense counsel stipulated that that representation by plaintiff's counsel would serve as an adequate offer of proof. The court rejected the offer on the same grounds: "(a), because it's not relevant, and (b), because it does not come within [OEC] 801(4)(a)(B) * * *."

■ As noted above, the court erred in concluding that there had been no charge of recent fabrication. Excluding the testimony on that basis was improper. The question, then, is whether the court's other basis for exclusion was valid, that is, whether the proffered testimony was properly excluded as irrelevant. Although Bronson's testimony would not have assisted the jury in answering the specific question of whether mother had been concerned about reduced fetal movement, it did tend to prove that she had *expressed to her physician* some pregnancy-related concern. And although grandmother's testimony did not address the question of whether mother had expressed her concerns to her physician during the pregnancy, it did tend to show that mother was *concerned about reduced fetal movement*. Taken together, Bronson's and grandmother's testimony made it more probable that mother had been concerned about fetal movement

during her pregnancy and had expressed that concern to her physician. Accordingly, the testimony was relevant. OEC 401.

That does not end the inquiry, however. We still must determine whether the trial court's decision to exclude the proffered evidence constitutes reversible error. That determination rests on whether the error was prejudicial, *i.e.*, affected a substantial right of the plaintiffs. OEC 103(1).[3] Substantial rights are not affected by an erroneous evidentiary ruling if a proper ruling would not likely have changed the result of the trial. *See Hass v. Port of Portland*, 112 Or App 308, 314, 829 P2d 1008, *rev den* 314 Or 391 (1992).

Here, we cannot say that the verdict would have remained in favor of defendants had the jury been allowed to hear testimony that would have rebutted the implied charge that, after the birth of child, mother fabricated a story about having expressed to her physician concerns about the fetus' reduced movement during the pregnancy. In their complaint, plaintiffs alleged that defendant Charles, in the exercise of reasonable care, should have known that "the baby's pattern of movement was unusual." Because Charles denied any such knowledge, plaintiffs' claim could only be established by testimony that mother had had concerns about the fetus' movement and had expressed those concerns to Charles. Defendants point to the fact that mother's husband at the time of trial (father) testified that she had expressed to him a concern that the fetus wasn't moving. He also testified that mother "said she told the doctor that the baby wasn't moving." Although father's statements did provide the type of rebuttal evidence that plaintiffs sought to place before the jury, the witness' marriage to mother, and the fact that he is the father of the child in this case, made him susceptible to impeachment for bias. Indeed, the cross-examination of father began:

"Q: Mr. Bremner, you were a party to this lawsuit until the morning that we started the trial, isn't that correct?

---

[3] OEC 103(1) provides:

"Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"

"A:  Yes, sir.

"Q:  And in the first complaint that was filed, which is an exhibit here, you sought to recover for yourself a half million dollars, did you not?

"* * * * *

"A:  Yes, sir."

As a general rule, the exclusion of evidence will not constitute reversible error if the jury had been given substantially the same information as was contained in the offer of proof. *See, e.g., Osborne v. Bessonette/Medford Mtrs.*, 265 Or 224, 229, 508 P2d 185 (1973); *Sneath v. Physicians and Surgeons Hospital*, 247 Or 593, 599, 431 P2d 835 (1967). However, all witnesses are not alike, and even similar testimony can have a qualitatively different impact. *See Beemer v. Lenske*, 257 Or 149, 152-53, 477 P2d 886 (1970). When the testimony of an easily impeachable witness is allowed while the substantially similar testimony of less assailable witnesses is excluded, the excluded testimony may not necessarily be cumulative. Here, for example, the jury could have believed Bronson and grandmother and disbelieved father, who was portrayed and likely viewed as having a pecuniary interest in the outcome of the trial. On this record, we cannot say that the erroneous exclusion of Bronson's and grandmother's testimony was harmless.

Because that error relates exclusively to the prenatal care provided by defendant Charles, and requires reversal only as to her, we address the remaining assignments that either present issues likely to arise on remand or that involve defendant Diehl, who delivered the baby, or defendant hospital, which employed the nurses.

■    Plaintiffs assign error to a jury instruction regarding nurse liability. The jury was told:

"The nurses were required to use that degree of skill and care and diligence which would have been used under the same or similar circumstances by reasonably careful and skillful nurses in the same or similar community. *Nurses are obligated, however, to carry out the orders of their doctors. And so long as the order is carried out in a competent manner, there's no negligence.*" (Emphasis supplied.)

Plaintiffs excepted to that instruction on the ground that "nurses have an independent duty to the patients, and * * * the thrust of that instruction was to tell the jurors that the nurse who follows an order is not negligent."

Plaintiffs argue that, by telling the jury that a nurse's duty is subordinate to *any* order that is given by a doctor, the challenged instruction improperly "qualified" the general duty of nurses to use reasonable skill and diligence. Defendant hospital responds that the instruction was correct because nurses have a duty to obey doctors' orders "unless the orders are so obviously improper that a reasonable nurse would not obey them." That argument proves too much, because the instruction provided in this case did *not* acknowledge that a "reasonable nurse" would disobey "obviously improper" orders. Rather, the instruction erroneously informed the jury that nurses are shielded from liability so long as they competently carry out a doctor's orders, regardless of how improper those orders may be. *Simpson v. Sisters of Charity of Providence*, 284 Or 547, 553, 588 P2d 4 (1978).

■ Hospital argues that the error was harmless because the jury returned a verdict in favor of defendant Diehl, and Diehl was the only doctor whose orders were carried out by the nurses in this case. They contend that implicit in that verdict is a finding that Diehl's orders were *not* improper. That is not necessarily the case.[4] The jury returned a verdict that answered "No," for each of the three defendants to the following question: "Were the defendants negligent in any respect alleged which was a cause of damage to plaintiffs[?]" Given that instruction, the jury could have found Diehl's orders improper, but not the cause of child's injury. Such determinations are especially likely where, as here, defendants brought to the attention of the jury other factors that might have been the cause of the injury, *e.g.*, the fact that both parents smoked during mother's pregnancy. The erroneous instruction was not harmless. Because it is unrelated

---

[4] Plaintiffs' position is that the nurses should have provided more intensive surveillance during the two-hour period that mother was at the hospital and in labor, but had not yet been seen by the doctor. They contend that the doctor's subsequent orders were, *inter alia*, based on inadequate or erroneous information provided by the nurses.

to the claims against Charles and Diehl, it requires reversal only as to the hospital.

Plaintiffs' final assignments of error challenge the trial court's rejection of three of their requested instructions. They contend that the following instructions should have been given to the jury:

(1) "A doctor has a duty to use reasonable skill and care to diagnose his or her patient's condition. A physician is negligent if he or she fails to perform such diagnostic tests as would be performed by a reasonably prudent and skillful physician under the same or similar circumstances, in the same or similar communities."

(2) "The term 'evidence' refers to testimony and exhibits. In deciding this case you are to consider and weigh all the evidence that you find worthy of belief. * * *"

(3) "The testimony of one witness, whom you believe, is sufficient to prove any fact in dispute. In other words, you are not simply to count the witnesses on each side but you are to weigh the evidence."

The record shows that the trial court gave an instruction that, although not couched in the precise terms of plaintiffs' first proffered instruction, was similar in all pertinent respects.[5] When a requested jury instruction embodies a statement of law that is otherwise covered by instructions that were provided by the trial court, there is no error. *Kabil Developments Corp. v. Mignot*, 279 Or 151, 158-59, 566 P2d 505 (1977).

---

[5] The court instructed the jury:

"Physicians who are obstetrician specialists, have the duty to use that degree of care, skill and diligence which is used by ordinarily careful obstetrician specialists practicing in the same or similar community. Failure to do so is negligence.

"*Physicians who are not obstetric specialists have a duty to use that degree of care, skill and diligence which is used by ordinarily careful family physicians practicing in the same or similar circumstances in the same or similar community. A failure to do so is negligence.* * * *

"A physician does not guarantee a good result by undertaking to perform a service. *Any negligent failure to perform diagnostic testing may be a substantial factor in causing injury if testing would have revealed a condition which would have responded to timely and proper treatment.* However, any incorrect diagnosis may not be a basis for recovery unless it is negligently made, is followed by improper treatment, and caused the damage complained of." (Emphasis supplied.)

■ Plaintiffs' second requested instruction contains two parts. Although the first part—regarding testimony and exhibits—was not provided to the jury, plaintiffs do not argue that its omission constituted reversible error. The principle contained in the second part—that jurors must consider and weigh all the evidence that they find worthy of belief—was adequately supplied by the following instructions that were given:

> "The issues in this case concerning the applicable standard of care required of the Defendants, whether they did or did not depart from those standards and the cause of any injury, are matters which involved technical medical skill and knowledge beyond the scope of laymen. The law, therefore, requires that such matters can only be proved by expert medical testimony and you must base your verdict so far as those subjects are concerned, exclusively upon the medical evidence which has been presented at this trial.

> "* * * * *

> "We have had testimony from several expert witnesses in this trial. Therefore, the following applies:

> "Witnesses with special knowledge, skill, experience, training or education in a particular field may give their opinions. You may consider their qualifications, their credibility and the reasons given for their opinions. *You're not bound by their individual opinions. Give their opinions the weight you feel they're entitled to receive.*" (Emphasis supplied.)

Considered as a whole, the instructions fairly presented the point that plaintiffs sought to make.

■ ■ We turn to plaintiffs' third requested instruction, which would have advised the jury not to simply count the witnesses on each side.[6] *See former* UCJI 2.06. The fundamental concept of not counting witnesses is embodied in ORS 10.095(2), which provides that, "on all proper occasions," jurors are to be instructed

> "[t]hat they are not bound to find in conformity with the declarations of *any number of witnesses*, which do not

---

[6] Defendants assert that when, as here, the court gives a requested instruction to the jury after *voir dire*, it should not be required to repeat it. That is incorrect. Remarks made at the beginning of a trial do not constitute an instruction. *Carter v. Mote*, 285 Or 275, 292 n 5, 590 P2d 1214 (1979); *McCaffrey v. Glendale Acres, Inc.*, 250 Or 140, 143 n 2, 440 P2d 219 (1968).

produce conviction in their minds, *against a less[er] number*, or against a presumption or other evidence satisfying their minds." (Emphasis supplied.)

The record shows that plaintiffs called a total of sixteen witnesses and defendants together called a total of fifteen witnesses. That did not present a "proper occasion" for giving the requested instruction. *Denton v. Davis*, 191 Or 646, 652-53, 233 P2d 213 (1951) (the witness-counting instruction should be given when "the number of witnesses testifying on behalf of the defendants greatly outnumbered those for plaintiff").

■ Nonetheless, on appeal, plaintiffs argue that the court should have given the proffered instruction because "significantly more *expert* witnesses [were] called by defendants than by plaintiffs." (Emphasis supplied.) When requesting the witness-counting instruction and when excepting to the court's failure to give it, plaintiffs neither expressly nor impliedly asked that the instruction refer to the counting of *expert* witnesses. Although the court was not bound to instruct the jury in the exact language of the requested instruction, *Andrews v. Lyon*, 237 Or 490, 392 P2d 247 (1964), it also was not required to edit that instruction. *Beglau v. Albertus*, 272 Or 170, 536 P2d 1251 (1975). Because the instruction that plaintiffs sought at trial was not warranted by the evidence, the court did not err in refusing to give it.

Reversed and remanded as to respondents Charles and Pendleton Community Memorial Hospital; otherwise affirmed.